IN THE

# United States Court of Appeals
# for the Eighth Circuit

LSP TRANSMISSION HOLDINGS, LLC,
*Plaintiff-Appellant*,

v.

NANCY LANGE, COMMISSIONER AND CHAIR, MINNESOTA PUBLIC UTILITIES
COMMISSION, IN HER OFFICIAL CAPACITY, ET AL.,
*Defendants-Appellees*,

and

NORTHERN STATES POWER COMPANY D/B/A XCEL ENERGY,
and ITC MIDWEST, LLC,
*Intervenors-Appellees*.

On Appeal from the
United States District Court for the District of Minnesota
Honorable Donovan W. Frank
No. 0:17-cv-04490-DWF

## BRIEF FOR THE UNITED STATES OF AMERICA AS AMICUS CURIAE IN SUPPORT OF NEITHER PARTY, VACATUR, AND REMAND

MAKAN DELRAHIM
   *Assistant Attorney General*
ANDREW C. FINCH
   *Principal Deputy Assistant
   Attorney General*
MICHAEL F. MURRAY
   *Deputy Assistant Attorney General*

ROBERT POTTER          KRISTEN C. LIMARZI
DANIEL E. HAAR         ROBERT B. NICHOLSON
MATTHEW C. MANDELBERG  ADAM D. CHANDLER
   *Attorneys*             *Attorneys*
U.S. DEPARTMENT OF JUSTICE  U.S. DEPARTMENT OF JUSTICE
ANTITRUST DIVISION         ANTITRUST DIVISION
                           950 Pennsylvania Ave., NW, Room 3224
                           Washington, DC 20530-0001
                           (202) 353-6638
                           adam.chandler@usdoj.gov

*Counsel for the United States*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................ ii

INTEREST OF THE UNITED STATES ................................................... 1

STATEMENT OF THE ISSUE ................................................................. 1

STATEMENT OF THE CASE .................................................................. 2

    A. Regulatory Background .................................................................. 2

    B. Factual and Procedural Background .............................................. 3

SUMMARY OF ARGUMENT .................................................................. 5

ARGUMENT ........................................................................................... 5

    I.     The District Court's Analysis of Discriminatory Effects
           Was Flawed ................................................................................ 7

    II.    The District Court's Reading of *General Motors Corp. v.
           Tracy* Was Overbroad. ............................................................. 10

    III.   The Federal Government Did Not Approve Minnesota's
           ROFR Law. .............................................................................. 15

CONCLUSION ....................................................................................... 17

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Page(s)

COURT CASES:

*Allco Fin. Ltd. v. Klee,*
   861 F.3d 82 (2d Cir. 2017) ................................................................ 13

*Ben Oehrleins & Sons & Daughter, Inc. v. Hennepin Cnty.,*
   115 F.3d 1372 (8th Cir. 1997) ............................................................ 9

*C & A Carbone, Inc. v. Town of Clarkstown,*
   511 U.S. 383 (1994) ................................................................... 9, 10

*Camps Newfound/Owatonna, Inc. v. Town of Harrison,*
   520 U.S. 564 (1997) ...................................................................... 10

*Comptroller of Treasury v. Wynne,*
   135 S. Ct. 1787 (2015) ............................................................. 6, 7, 8

*Dean Milk Co. v. City of Madison,*
   340 U.S. 349 (1951) ........................................................................ 9

*Dep't of Revenue v. Davis,*
   553 U.S. 328 (2008) ..................................................................... 1, 6

*Fort Gratiot Sanitary Landfill, Inc. v. Mich. Dep't of Natural*
   *Res.,* 504 U.S. 353 (1992) .............................................................. 9

*General Motors Corp. v. Tracy,*
   519 U.S. 278 (1997) ............................................................. *passim*

*Granholm v. Heald,*
   544 U.S. 460 (2005) ............................................................. 7, 8, 15

*IESI AR Corp. v. Nw. Ark. Reg'l Solid Waste Mgmt. Dist.,*
   433 F.3d 600 (8th Cir. 2006) ............................................................ 9

Page(s)

*MISO Transmission Owners v. FERC*,
819 F.3d 329 (7th Cir. 2016)............................................ 3, 14

*New England Power Co. v. New Hampshire*,
455 U.S. 331 (1982).............................................................. 12

*Or. Waste Sys., Inc. v. Dep't of Envtl. Quality*,
511 U.S. 93 (1994) ................................................................. 7

*Pike v. Bruce Church, Inc.*,
397 U.S. 137 (1970)................................................................ 4

*S. Wine & Spirits of Am., Inc. v. Div. of Alcohol & Tobacco Control*,
731 F.3d 799 (8th Cir. 2013)................................................. 8

*S.C. Pub. Serv. Auth. v. FERC*,
762 F.3d 41 (D.C. Cir. 2014) ................................................. 3

*Wheelabrator Lisbon, Inc. v. Conn. Dep't of Pub. Util. Control*,
531 F.3d 183 (2d Cir. 2008) ................................................. 13

*Wyoming v. Oklahoma*,
502 U.S. 437 (1992)......................................................... 12, 16

ADMINISTRATIVE CASES:

*Midwest Indep. Transmission Sys. Operator, Inc.*,
150 FERC 61,037 (Jan. 22, 2015)........................................ 15

*Transmission Owning & Operating Pub. Utils.*,
136 FERC 61,051 (July 21, 2011) (Order No. 1000) ........... 2, 3

CONSTITUTION:

U.S. Const. art. I, § 8, cl. 3 (Commerce Clause) ............... *passim*

# TABLE OF AUTHORITIES—Continued

Page(s)

FEDERAL STATUTE:

16 U.S.C. § 824 ........................................................................... 16

STATE STATUTE:

Minn. Stat. § 216B.246 (Minnesota's ROFR Law) ........................ *passim*

RULE:

Fed. R. App. P. 29(a) ..................................................................... 1

## INTEREST OF THE UNITED STATES

The United States has a longstanding interest in promoting and preserving competition in interstate commerce. We demonstrate this interest most commonly by enforcing the federal antitrust laws. We also further the interest by ensuring that courts properly apply the Supreme Court's dormant Commerce Clause doctrine, which guards against "economic protectionism" that "benefit[s] in-state economic interests by burdening out-of-state competitors," *Dep't of Revenue v. Davis*, 553 U.S. 328, 337-38 (2008). We file this brief, pursuant to Fed. R. App. P. 29(a), to promote sound dormant Commerce Clause analysis. We do so irrespective of the ultimate result, on which this brief takes no position.

## STATEMENT OF THE ISSUE

The district court dismissed a dormant Commerce Clause challenge to a Minnesota statute that gives in-state electric transmission owners a right of first refusal to build high-voltage transmission lines that connect to their existing facilities. This brief addresses whether the dismissal should be vacated and the case

remanded due to errors we identify in the district court's dormant Commerce Clause analysis.

## STATEMENT OF THE CASE

On June 21, 2018, the U.S. District Court for the District of Minnesota dismissed with prejudice LSP Transmission Holdings, LLC's (LSP) complaint that Minnesota Statute § 216B.246 violates the Commerce Clause. LSP appeals that decision.

### A.  Regulatory Background

Prior to 2011, the Federal Energy Regulatory Commission (FERC) approved filings proposing that incumbent electric transmission companies have a federal right of first refusal (ROFR) to construct transmission lines that would connect to their facilities. In 2011, FERC eliminated this incumbent advantage from FERC-jurisdictional tariffs and agreements, finding that it restricted competition, was not just and reasonable, and created the potential for undue discrimination and preferential treatment. *See Transmission Planning & Cost Allocation by Transmission Owning & Operating Pub. Utils.*, 136 FERC 61,051, 2011 WL 2956837 (July 21, 2011) ("Order No. 1000"). Two courts of appeals have upheld Order No. 1000 as a valid exercise of FERC's

authority.  *MISO Transmission Owners v. FERC*, 819 F.3d 329 (7th Cir. 2016); *S.C. Pub. Serv. Auth. v. FERC*, 762 F.3d 41 (D.C. Cir. 2014).

Order No. 1000, however, was not "intended to limit, preempt, or otherwise affect state or local laws or regulations," Order No. 1000 ¶ 287, and in 2012, Minnesota enacted a state ROFR law.  Minnesota Statute § 216B.246 gives "any public utility that owns, operates, and maintains an electric transmission line in this state" a ROFR to build and own new federally approved high-voltage transmission lines that connect to its existing facilities.  Minn. Stat. § 216B.246, subdivs. 1(c), 2.

### B.  Factual and Procedural Background

LSP builds and operates transmission lines outside Minnesota and would like to expand its business to Minnesota.  APP2 ¶ 2, APP6-7 ¶¶ 18-20, APP23-25 ¶¶ 69-78.  LSP sued several Minnesota officials, challenging the state's ROFR law as a barrier to entry that violates the dormant Commerce Clause.  LSP alleges that the statute discriminates against out-of-state transmission developers in favor of transmission owners that already operate in Minnesota, APP26 ¶¶ 85-87, and that,

in any event, the statute unduly burdens interstate commerce by "walling off the state from new market participants," APP27 ¶ 91.

The defendants, alongside intervenors Northern States Power Company (NSP) and ITC Midwest LLC, moved to dismiss LSP's complaint for failure to state a claim. ECF Nos. 18, 37 & 48. On June 21, 2018, the district court ruled that the Minnesota ROFR law "does not violate the dormant Commerce Clause" and dismissed LSP's complaint with prejudice. ADD25.

The court held that the case is controlled by *General Motors Corp. v. Tracy*, 519 U.S. 278 (1997), which, according to the court's analysis, effectively created an exception to the dormant Commerce Clause for state laws that give benefits to public utilities. ADD16-17 n.7, ADD18. The court also concluded that Minnesota's ROFR law "does not discriminate against out-of-state entities," ADD20, and that it survives the balancing test from *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970); ADD21-25. Among its reasons for the latter conclusion was that FERC has "expressly approved the use of state right-of-first-refusal laws." ADD24.

This appeal followed.

## SUMMARY OF ARGUMENT

The district court made three discrete, analytical errors in its decision, warranting vacatur and remand for a revised analysis on the motions to dismiss. *First*, the district court erroneously looked to the location of firms' headquarters, rather than to their in-state physical presence, to measure discriminatory effects, and it mistakenly believed that state laws favoring only *some* in-state entities are necessarily consistent with the dormant Commerce Clause. *Second*, the district court overread *General Motors Corp. v. Tracy*, 519 U.S. 278 (1997) (*Tracy*). *Tracy* does not control this case because the unique factors and concerns present in *Tracy* are not present here. *Third*, the federal government has neither authorized nor approved Minnesota's ROFR law or others like it, despite the district court's assertion to the contrary. Vacatur and remand will allow the district court to reexamine the complaint and the motions to dismiss with these flaws corrected.

## ARGUMENT

The Commerce Clause, U.S. Const. art. I, § 8, cl. 3, gives Congress the power to regulate interstate commerce, and the Supreme Court has

interpreted the Clause to contain as well the negative implication—referred to as the "dormant Commerce Clause"—that restrains the states from regulating interstate commerce. *Dep't of Revenue v. Davis*, 553 U.S. 328, 337 (2008). The dormant Commerce Clause prohibits states from interfering with interstate commerce by either "discriminating against" or "imposing excessive burdens" on interstate commerce. *Comptroller of Treasury v. Wynne*, 135 S. Ct. 1787, 1794 (2015).

LSP alleges that the Minnesota ROFR law fails both the anti-discrimination test and the undue-burden test because it favors companies with a certain physical presence in the state and creates detrimental incentives for transmission developers and local incumbents. The district court did not properly analyze LSP's allegations under key dormant Commerce Clause precedents and mistook the federal government's position on state ROFR laws. On remand, the district court should reexamine the complaint and the motions to dismiss with these flaws corrected.

# I. The District Court's Analysis of Discriminatory Effects Was Flawed.

"Discrimination" for purposes of the dormant Commerce Clause means "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Or. Waste Sys., Inc. v. Dep't of Envtl. Quality*, 511 U.S. 93, 99 (1994). A state law can discriminate against interstate commerce not just on its face, but also through a discriminatory effect. *Wynne*, 135 S. Ct. at 1794.

The Supreme Court recognizes that state laws restricting out-of-state entities' ability to participate in in-state commerce on the same terms as in-state entities have impermissible discriminatory effects. *E.g.*, *Granholm v. Heald*, 544 U.S. 460 (2005) (finding state laws unconstitutionally discriminatory because they allowed only in-state wineries to ship directly to customers). LSP alleges that Minnesota's ROFR law has unconstitutionally discriminatory effects because it gives certain companies that have established a physical presence in Minnesota the right to displace their competitors in the development of local electric transmission lines.

In analyzing these allegations of discrimination, the district court gave undue weight to where companies were headquartered, as opposed

to where they operate.  ADD20.  In *Heald*, New York claimed to have a nondiscriminatory statute because both in-state and out-of-state wineries could become licensees to ship wine directly to New York customers.  544 U.S. at 474.  The Supreme Court nevertheless invalidated the New York statute because the out-of-state winery would need to establish a physical presence in the state to obtain a license.  *Id.* at 474-75.

In this case, as in *Heald*, companies must own a facility in the state to benefit from the state law.  That "restrictive in-state presence requirement," *Heald*, 544 U.S. at 475, is what concerns the dormant Commerce Clause, not the formality of where a company is headquartered or incorporated.  *Cf. Wynne*, 135 S. Ct. at 1795 (emphasizing a state law's "practical effect" over its "formal language" in analyzing discriminatory effects).  *See generally S. Wine & Spirits of Am., Inc. v. Div. of Alcohol & Tobacco Control*, 731 F.3d 799, 809 (8th Cir. 2013) (stating that "the [Supreme] Court's discussion [in *Heald*] provides the best guidance," given its "recency and specificity").

The district court also erred in reasoning that the Minnesota law is nondiscriminatory because some of the entities it disfavors are in-

state. *See* ADD20 (explaining that the law "draws a neutral distinction" because the ROFR "does not apply to all incumbent electric transmission owners, but only to those directly connected to the proposed line," thereby excluding some in-state entities on any given project). A law "is no less discriminatory because in-state or in-town processors are also covered by the prohibition." *C & A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383, 391 (1994); *see also Fort Gratiot Sanitary Landfill, Inc. v. Mich. Dep't of Natural Res.*, 504 U.S. 353, 361 (1992) ("[A] State . . . may not avoid the strictures of the Commerce Clause by curtailing the movement of articles of commerce through subdivisions of the State, rather than through the State itself."); *Dean Milk Co. v. City of Madison*, 340 U.S. 349 (1951) (declaring unconstitutional a city ordinance requiring milk sold in the city to be processed within a five-mile radius of the city center).[1]

Thus, the fact that the disfavored group includes both in-state and out-of-state entities does not necessarily mean that Minnesota's ROFR

---

[1] This Court has held that purely local discrimination among intrastate entities "does not constitute discrimination against interstate commerce." *IESI AR Corp. v. Nw. Ark. Reg'l Solid Waste Mgmt. Dist.*, 433 F.3d 600, 605 (8th Cir. 2006) (quoting *Ben Oehrleins & Sons & Daughter, Inc. v. Hennepin Cnty.*, 115 F.3d 1372, 1385 (8th Cir. 1997)).

law is not discriminatory. Favoring entities with a physical presence in the state, and favoring those entities exclusively, can, in some circumstances, be sufficient "to bring the [law] within the purview of the Commerce Clause." *C & A Carbone*, 511 U.S. at 389; *see also id.* at 392 (holding that favoring a single local entity, rather than all local entities, "just makes the protectionist effect . . . more acute"). Vacatur and remand will allow the district court to reexamine the complaint and the motions to dismiss with these flaws corrected.

## II. The District Court's Reading of *General Motors Corp. v. Tracy* Was Overbroad.

1. The district court quoted a dissenting opinion in *Camps Newfound/Owatonna, Inc. v. Town of Harrison*, 520 U.S. 564 (1997), for the proposition that *Tracy* "effectively creates what might be called a 'public utilities' exception to the negative Commerce Clause." ADD16-17 n.7 (quoting *Camps*, 520 U.S. at 607 (Scalia, J., dissenting)). There is not, however, a general exception to the dormant Commerce Clause for state laws benefiting public utilities.

*Tracy* relied on case-specific factors to find that, "for present purposes," the dormant Commerce Clause was inapplicable. *Tracy*, 519 U.S. at 304. At issue was an Ohio sales tax exemption that applied to

natural gas sales by local distribution utilities, but not to sales by independent marketers of natural gas, which sold mainly to large industrial customers. *Tracy*'s analysis, which upheld the differential application of the tax, was driven by the concern that "any decision to treat the [utilities] as similar to the interstate marketers . . . could affect the [utilities'] ability to continue to serve the captive market [*i.e.*, residential and small-business customers] where there is no such competition." *Id.* at 307.


*Tracy* made clear that it was not creating a broad "public utility" exception to the dormant Commerce Clause. It acknowledged that there was "no *a priori* answer" to whether the Court should "accord controlling significance to the noncaptive market in which [utilities and interstate marketers] compete, or to the noncompetitive, captive market in which the local utilities alone operate." *Id.* at 303-04. The answer instead must be context-dependent.

Other Supreme Court cases demonstrate that *Tracy* did not establish a categorical rule shielding all electricity-related regulation from dormant Commerce Clause scrutiny. The Court has not hesitated to invalidate state electricity regulations that discriminated against or

burdened interstate commerce in markets different from, but adjacent to, retail electricity. *See, e.g., Wyoming v. Oklahoma*, 502 U.S. 437 (1992) (holding that a state law violated the dormant Commerce Clause because it required in-state electricity generators to use a certain amount of coal mined in-state); *New England Power Co. v. New Hampshire*, 455 U.S. 331 (1982) (holding that a state law unconstitutionally required an electric utility to obtain the state utility commission's permission before conveying electricity out-of-state). Against the background of these precedents, which *Tracy* did not touch, *Tracy* cannot fairly be read to create a broad dormant Commerce Clause exception for public utilities.

2. The unique factors present in *Tracy* do not arise here, and so *Tracy* is not controlling. For example, the *Tracy* Court was concerned that, if the relevant sales tax were imposed on a public utility, any resulting contraction of the utility's total customer base might increase the unit cost of the bundled product, and thus might affect the utility's ability to serve the captive residential market. *Tracy*, 519 U.S. at 307. That possibility led the Court "to proceed cautiously lest we imperil the

delivery by regulated [utilities] of bundled gas to the noncompetitive captive market." *Id.* at 304.

Here, the defendants and intervenors present no economic argument that a captive market for retail sales of electricity will be harmed if outsiders were allowed to develop transmission facilities. Moreover, most state electric markets operate without a ROFR law, and Minnesota makes no argument that those states have jeopardized their capacity to serve retail markets.

Even though *Tracy* tied its conclusion strictly to its facts, the district court applied *Tracy* broadly, reasoning that "[r]egulated utilities (the existing transmission line owners with a right of first refusal) are not similarly situated with unregulated entities such as LSP." ADD19-20.[2] *Tracy* did caution that two entities are not "similarly situated" for dormant Commerce Clause purposes when they "serve different markets, and would continue to do so even if the supposedly

_____

[2] The district court also relied on *Allco Fin. Ltd. v. Klee*, 861 F.3d 82 (2d Cir. 2017); ADD17, but the products at issue in *Allco*—renewable energy certificates—were "inventions of state property law," *Wheelabrator Lisbon, Inc. v. Conn. Dep't of Pub. Util. Control*, 531 F.3d 183, 186 (2d Cir. 2008) (per curiam). Arising in two different states, the products—as in *Tracy*—could "be treated as different." *Allco*, 861 F.3d at 105. Minnesota did not create a product in this case.

discriminatory burden were removed." 519 U.S. at 299. In this case, though, the fact that incumbent transmission owners want a ROFR—as demonstrated in part by the intervenors here—suggests that the incumbents and non-incumbents compete to some degree. *See MISO Transmission Owners v. FERC*, 819 F.3d 329, 333-34 (7th Cir. 2016). The district court should fully assess that issue on remand without its *Tracy* error.

3. To be clear, *Tracy* does support the proposition that a district court must analyze an individual law by reference to the broader regulatory context in which it appears. That is critical, for example, to determining whether two entities are in fact similarly situated. In some cases, this analysis will be fact-dependent, such that it cannot be decided at the motion-to-dismiss stage. In others, this analysis could be capable of resolution at the motion-to-dismiss stage. Regardless, the district court must conduct a nuanced analysis that considers the entire system of regulation. It should do so on remand here.

## III. The Federal Government Did Not Approve Minnesota's ROFR Law.

The district court's statement that FERC had "expressly approved the use of state right-of-first-refusal laws," ADD24, is mistaken.[3] The district court relied on two citations to a FERC order, but neither supports the court's statement. The first citation—*Midwest Indep. Transmission Sys. Operator, Inc.*, 150 FERC 61,037, 61,174 ¶ 18 (Jan. 22, 2015)—points to a paragraph that recounts a party's arguments, which are not relevant to FERC approval. The second—*id.* at (presumably) 61,177 ¶ 27 (the district court pin-cited "61166 ¶ 27," which does not exist)—is similarly inapt. Neither paragraph cited in the district court's opinion uses the word "approve," or any similar word, or idea.[4]

The defendants made a "federal approval" argument based merely on the fact that FERC did not preempt state ROFR laws. ECF No. 21

---

[3] The point is significant because Congress—or an agency exercising delegated authority—has "the power to authorize the States to place burdens on interstate commerce." *Heald*, 544 U.S. at 493.

[4] Elsewhere in the same order, FERC acknowledged that state ROFR laws exist, but held only that "it is appropriate for [the regional authority] to recognize state or local laws or regulations as a threshold matter in the regional transmission planning process." 150 FERC at 61,176 ¶ 25.

(Minnesota's motion to dismiss), at 13; ECF No. 39 (NSP's motion to dismiss), at 23-24. The district court did not address this argument— understandably, because the Supreme Court has made clear that declining to preempt state law, without more, does not authorize states to violate the dormant Commerce Clause, *see Wyoming*, 502 U.S. at 458. The defendants also argued that Congress intended to authorize states to violate the dormant Commerce Clause in the Federal Power Act. They relied, however, on the same section of the FPA that the *Wyoming* Court was reviewing when it concluded that "[o]ur decisions have uniformly subjected [dormant] Commerce Clause cases implicating the Federal Power Act to scrutiny on the merits." 502 U.S. at 458; *see* ECF No. 21 (Minnesota's motion to dismiss), at 2 (citing 16 U.S.C. § 824); ECF No. 39 (NSP's motion to dismiss), at 1-2, 4-5 (same).

## CONCLUSION

This Court should vacate the district court's judgment and remand for a reevaluation of the motions to dismiss.

Respectfully submitted.

  /s/ Adam D. Chandler

MAKAN DELRAHIM
  *Assistant Attorney General*

ANDREW C. FINCH
  *Principal Deputy Assistant Attorney General*

MICHAEL F. MURRAY
  *Deputy Assistant Attorney General*

| | |
|---|---|
| ROBERT POTTER | KRISTEN C. LIMARZI |
| DANIEL E. HAAR | ROBERT B. NICHOLSON |
| MATTHEW C. MANDELBERG | ADAM D. CHANDLER |
| *Attorneys* | *Attorneys* |
| U.S. DEPARTMENT OF JUSTICE | U.S. DEPARTMENT OF JUSTICE |
| ANTITRUST DIVISION | ANTITRUST DIVISION |
| | 950 Pennsylvania Ave., N.W. |
| | Room 3224 |
| | Washington, D.C. 20530-0001 |
| | (202) 353-6638 |
| | adam.chandler@usdoj.gov |

*Counsel for the United States*

October 19, 2018

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 29(a)(4)(G) and Fed. R. App. P. 32(g)(1), I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) and Fed. R. App. P. 32(a)(7)(B) because, excluding the parts exempted by Fed. R. App. P. 32(f), this brief contains 2964 words.

I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in Microsoft Office Word 2013 using 14-point New Century Schoolbook font, a proportionally spaced typeface.

I further certify that this brief complies with 8th Cir. R. 28A(h)(2) because the brief has been scanned for viruses and is virus-free.

October 19, 2018

/s/ Adam D. Chandler
*Counsel for the United States*

# CERTIFICATE OF SERVICE

I certify that on October 19, 2018, I caused the foregoing to be filed through this Court's CM/ECF filer system, which will serve a notice of electronic filing on all registered users, including counsel of record for all parties.


October 19, 2018                          /s/ Adam D. Chandler
                                        *Counsel for the United States*