No. 18-2559

# IN THE UNITED STATES COURT OF APPEALS FOR THE EIGHT CIRCUIT

LSP Transmission Holdings, LLC,

*Plaintiff-Appellant*,

v.

Nancy Lange, Commissioner and Chair, Minnesota Public Utilities Commission;
Dan Lipschultz, Commissioner, Minnesota Public Utilities Commission;
Matt Schuerger, Commissioner, Minnesota Public Utilities Commission;
John Tuma, Commissioner, Minnesota Public Utilities Commission;
Katie Sieben, Commissioner, Minnesota Public Utilities Commission, and
Mike Rothman, Commissioner, Minnesota Department of Commerce,
each in his or her official capacity,

*Defendants-Appellees*,

and

Northern States Power Company d/b/a Xcel Energy, and ITC Midwest, LLC,

*Intervenors-Appellees*.

On Appeal from the United States District Court for the District of Minnesota Civil No. 0:17-cv-04490 (DWF/HB)

## BRIEF OF THE IOWA DEPARTMENT OF JUSTICE, OFFICE OF CONSUMER ADVOCATE AS AMICUS CURIAE IN SUPPORT OF PLAINTIFF-APPELLANT

Mark R. Schuling
   *Consumer Advocate*

Jennifer C. Easler
John S. Long
Jeffrey J. Cook
   *Attorneys*

*Iowa Department of Justice*
*Office of Consumer Advocate*

1375 East Court Avenue
Des Moines, Iowa  50319-0063
(515) 725-7200
IowaOCA@oca.iowa.gov

# TABLE OF CONTENTS

**<u>Page</u>**

TABLE OF CONTENTS ................................................................................ i

TABLE OF AUTHORITIES.......................................................................... ii

STATEMENT OF THE INTEREST OF AMICUS CURIAE OFFICE OF CONSUMER ADVOCATE ..................................................................1

ARGUMENT ................................................................................. 2

CONCLUSION .............................................................................. 6

CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32.............7

CERTIFICATE OF VIRUS FREE....................................................... 8

CERTIFICATE OF SERVICE............................................................. 9

# TABLE OF AUTHORITIES

**Case Law**                                                                   **Page(s)**

*S.C. Pub. Serv. Auth. v. F.E.R.C.*, 762 F.3d 41, 74 (D.C. Cir. 2014) ..... 3

**Statutory Law**

Iowa Code § 475A.2 (2017) ............................................................ 1, 2

Minn. Stat. § 216B.246 ..................................................................1–5

**Other Authorities**

Federal Rule of Appellate Procedure 29(a)(2) ..................................... 1

MISO, Cost Allocation Reform Review, 35 (Oct. 19, 2017), https://cdn.misoenergy.org/20171019%20RECBWG%20Item%2002%20Cost%20Allocation%20Refresher90355.pdf ....... 3

MISO, Cost Allocation Response (Feb. 15, 2018), https://cdn.misoenergy.org/20180215%20RECBWG%20Item%2002%20and%2003%20MISO%20Cost%20Allocation%20Response127807.pdf ...................................................................................... 4

# INTEREST OF THE AMICUS CURIAE

The Iowa Office of Consumer Advocate (Iowa Consumer Advocate) is a division of the Department of Justice of the State of Iowa and has a duty to represent Iowa ratepayers generally and the Iowa public generally. Iowa Code § 475A.2 (2017). The Office of Consumer Advocate has an interest in representing Iowa ratepayers and consumers both in state and federal proceedings. *Id.* The Office of Consumer Advocate files this amicus brief pursuant to Federal Rule of Appellate Procedure 29(a)(2).

This case involves application of Minnesota Statute § 216B.246 (Minnesota ROFR Statute), which grants incumbent electric transmission owners the right of first refusal to construct electric transmission lines in the state of Minnesota. The costs of the transmission lines subject to the Minnesota ROFR Statute are allocated to ratepayers on a regional basis. The Iowa Consumer Advocate is concerned the Minnesota ROFR Statute deprives ratepayers, including those in Iowa and other surrounding states, of the benefits of competitive bidding for construction of the transmission lines. This amicus brief addresses the potential cost increases for Iowa ratepayers as a result of the Minnesota ROFR Statute.

# ARGUMENT

The Iowa Office of Consumer Advocate (Iowa Consumer Advocate) is a division of the Department of Justice of the State of Iowa and is authorized to represent Iowa electric consumers generally and the Iowa public generally. Iowa Code § 475A.2 (2017). This case involves application of the Minnesota ROFR Statute, which grants incumbent electric transmission owners in the state of Minnesota the right of first refusal to construct regionally approved electric transmission lines in the state of Minnesota. The Iowa Consumer Advocate is concerned that state right-of-first-refusal statutes like the Minnesota ROFR Statute will increase transmission rates in neighboring states.

The Huntley-Wilmarth transmission project in Minnesota provides a useful example of the potential for a right-of-first-refusal statute to increase transmission rates for Iowa ratepayers. The Huntley-Wilmarth project represents approximately fifty miles of 345 kV transmission line to be built between two substations in Minnesota. Dkt. 40-3 at 1-2. Midcontinent Independent Systems Operator, Inc. (MISO) approved the proposed projects as a Market Efficiency Project (MEP). *Id.* As an MEP, the costs of the Huntley-Wilmarth project are shared by customers outside of Minnesota and across the MISO footprint. MISO's cost allocation process

2

is complicated, but Iowa customers should expect to pay approximately half the costs of the Huntley-Wilmarth project.[1] Pursuant to the Minnesota ROFR Statute, MISO assigned the Huntley-Wilmarth project to incumbent Minnesota transmission owners Xcel Energy (Xcel) and ITC Midwest LLC (ITC) without resorting to MISO's competitive bidding process. Dkt. 40-3 at 1-2.

The Minnesota ROFR Statute can increase costs to Iowa consumers in two important ways. First, the right of first refusal can directly increase project costs by decreasing competition in the construction process. Firms facing competitive pressure will be motivated to find construction and design efficiencies in ways a monopolist will not. *S.C. Pub. Serv. Auth. v. F.E.R.C.*, 762 F.3d 41, 74 (D.C. Cir. 2014) ("[B]asic economic principles make clear that rights of first refusal are likely to have a direct effect on the costs of transmission facilities because they erect a barrier to entry . . ."). Thus, Iowa consumers will pay more for Huntley-Wilmarth to the extent the Minnesota ROFR Statute directly increases transmission costs by

---

[1] Cost for Market Efficiency Projects in MISO, like the Huntley-Wilmarth Project, are allocated 20% to the MISO region as a whole and 80% to the "beneficiaries" of the project. *See* MISO, Cost Allocation Reform Review, 35 (Oct. 19, 2017), https://cdn.misoenergy.org/20171019%20RECBWG%20Item%2002%20Cost%20Allocation%20Refresher90355.pdf . Under the preliminary cost allocation for the Huntley-Wilmarth project, the Iowa zone will be allocated 60% of the 80% "beneficiary" share of the project as well as its proportionate share of the 20% regional allocation. *See id.*

decreasing competition.

Second, rights of first refusal like the Minnesota ROFR Statute also increase costs for out-of-state consumers by making it more likely that utility ratepayers will be required to pay cost overruns associated with transmission projects. Proposed MISO MEPs are judged based on a cost-benefit analysis, which means as the cost to build a project increases the net benefit of the project decreases. See MISO, Cost Allocation Response (Feb. 15, 2018), https://cdn.misoenergy.org/20180215%20RECBWG%20Item% 2002%20and%2003%20MISO%20Cost%20Allocation%20Response12780 7.pdf. In competitive bidding for transmission projects, bidders are more willing to agree to shield utility ratepayers from the risks of cost overruns and other development risks or costs ensuring that ratepayers see the alleged benefits of MISO approved projects. *See* Dkt. 61-1 at 244. Non-competitive bidders do not face similar motivation to shield ratepayers from cost overruns. The Minnesota ROFR Statute will likely impose additional costs on Iowa consumers for the Huntley-Wilmarth project by depriving Iowa ratepayers of the benefits of competitive bids which shift the risk of cost overruns from ratepayers to developers. *Cf.* APP12—13 at ¶35 (noting that absent a ROFR statute, bids on transmission projects include cost caps and other cost reduction factors beneficial to ratepayers). Thus,

Iowa ratepayers will bear the risk of cost overruns to the extent Xcel and ITC experience cost overruns when constructing the Huntly-Wilmarth project.

These cost increases caused by the Minnesota ROFR Statute harm consumers in Iowa. Iowa consumers are harmed because they are forced to pay higher costs for transmission services, both directly through reduced competition, and indirectly, through denial of risk shifting provisions in bids. The Court should hold that right-of-first-refusal-statutes like the Minnesota ROFR Statute impermissibly burden interstate commerce.

# CONCLUSION

The Iowa Office of Consumer Advocate respectfully requests this court to reverse the decision below.

Respectfully submitted,

/s/ *Mark R. Schuling*
Mark R. Schuling
*Consumer Advocate*

Jennifer C. Easler
John S. Long
Jeffrey J. Cook
*Attorneys*

*Counsel for Amicus Curiae*

Iowa Department of Justice
Office of Consumer Advocate
1375 East Court Avenue
Des Moines, Iowa
50319-0063
Telephone: (515) 725-7200
IowaOCA@oca.iowa.gov

# CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32

The undersigned counsel of record hereby certifies, pursuant to Fed. R. App. P. 32(g), that:

1. This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) because this brief contains 983 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f); and

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Georgia 14.

Dated: October 23, 2018         *s/Mark R. Schuling*
                                 Mark R. Schuling

## CERTIFICATE OF VIRUS FREE

Pursuant to Local Rule 28A(h)(2) of the Eighth Circuit Rules of Appellate Procedure, the undersigned counsel hereby certifies that this brief has been scanned for computer viruses and is virus free.

Dated: October 23, 2018      *s/Mark R. Schuling*

                                                   Mark R. Schuling

# CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2018, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

Dated: October 23, 2018     *s/Mark R. Schuling*

                                                       Mark R. Schuling